MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Earl Dean Taylor alleged that he injured his neck and shoulders during an on-the-job safety drill at First Chemical. The administrative law judge (ALJ), however, found no compensable injury and denied benefits, and the ALJ’s order was affirmed by the Mississippi Workers’ Compensation Commission. The Commission’s decision was then affirmed by the Jackson County Circuit Court, and Taylor appeals from that judgment. Finding the Commission’s denial of benefits to be supported by substantial evidence, we affirm.
 

 FACTS
 

 ¶ 2. Taylor alleged that he was injured on the job on December 19, 2004, during a safety drill. He testified that he was returning a thirty-to-forty-pound portable air tank to a cabinet when he felt a sharp pain in his neck, radiating into his shoulder blades, which he believed at the time to be a pulled muscle.
 

 ¶ 3. Taylor testified that he initially intended to report the injury while meeting with a supervisor, Henry Wilkins, after the accident. Although he did meet with the supervisor, Taylor decided not to report the injury because he had only one hour left to work before leaving for a week-long Christmas vacation. Taylor also testified that he did not want to report the injury because he had been told that missed-work injuries could threaten company-wide bonuses.
 

 ¶4. During his vacation, Taylor stated that he rested and used over-the-counter pain medication. The following Wednesday, three days after the alleged injury, Taylor returned to work for a mandatory safety meeting that lasted approximately one hour, but he again did not report the injury. Instead, Taylor reported it after returning to work the following week, when he found he could not lift his body weight to climb a ladder, a regular part of his job duties. Taylor testified that this was when he realized that the injury was more severe than a pulled muscle.
 

 
 *162
 
 ¶ 5. Following his injury, Taylor was referred by First Chemical to Dr. Steven Fineberg. After two weeks of therapy, Taylor was told to see his own physician, Dr. Chris Wiggins, and to pay for it with his own insurance. Dr. Wiggins ultimately referred Taylor to Dr. John McCloskey, a neurosurgeon.
 

 ¶ 6. Dr. McCloskey examined Taylor and ordered a myelogram, an examination which revealed what he described as a “really big ruptured disc at C5-6” in Taylor’s spine, as well as abnormalities in the discs above and below. Dr. McCloskey opined that this injury resulted from the incident alleged by Taylor to have occurred on December 19, 2004.
 

 ¶ 7. In August 2005, Dr. McCloskey performed surgery on Taylor, which he described as a three-level anterior cervical diskectomy and fusion. Following the surgery, Dr. McCloskey determined that Taylor had reached maximum medical improvement and could return to work, restricted to light-duty work, on January 20, 2006. First Chemical, however, would not rehire Taylor with the restrictions, and he was unable to secure other employment. On June 10, 2006, Dr. McCloskey increased Taylor’s restrictions and ultimately opined that Taylor was permanently disabled as a result of the subject injury and was unable to do any work for which he was physically capable or educationally prepared.
 
 [1]
 

 ¶ 8. Wilkins, Taylor’s shift supervisor, testified for First Chemical. He stated that he had been Taylor’s supervisor for five years and had observed Taylor on a day-to-day basis. Wilkins stated that Taylor rarely missed work and that he believed Taylor was a good employee. Wilkins testified, however, that Taylor had been trained to return the air tank to the cabinet in a way that would not have caused the injury Taylor alleged.
 
 [2]
 

 ¶ 9. Wilkins also testified that Taylor’s shift on the day of the incident had been from 5:00 a.m. to 5:00 p.m., and that the safety drill occurred sometime during the middle of the day. Wilkins also testified that Taylor stopped by his office that day, within an hour of the end of the shift. Taylor reported a damaged seal on the air tank cabinet, but he did not mention an injury or appear to be in any discomfort. Wilkins testified that he again saw Taylor at the safety meeting on the following Wednesday, and Taylor again did not report an injury or manifest any discomfort. Wilkins also stated that First Chemical’s policy is to report work-related injuries within twenty-four hours, and he averred that he had never discouraged an employee from reporting an injury.
 

 ¶ 10. Dr. Eric Wolfson conducted an employer medical evaluation of Taylor on May 22, 2006. Dr. Wolfson determined that Taylor could return to work, with restrictions, and was not disabled. Furthermore, Dr. Wolfson opined that Taylor’s disc herniation at issue had not resulted from the December 19, 2004,
 
 *163
 
 incident alleged; he testified that the alleged injury would have produced immediate symptoms which would not have been mistaken for a pulled muscle.
 

 ¶ 11. The ALJ favored Wilkins’s testimony over Taylor’s and found that Taylor failed to prove that he had suffered a work-related injury on December 19, 2004. The ALJ therefore denied workers’ compensation benefits. Her order was affirmed by the Commission, and that decision was affirmed by the circuit court. Taylor appeals from that judgment, asserting three issues: (1) whether Taylor offered substantial evidence that his injury occurred on the job; (2) whether the Commission used the correct standard of deference when it rejected the treating physician’s opinion as to causation and relied upon Dr. Wolfson’s testimony; and (3) whether there is credible evidence that Taylor’s cervical herniation was pre-exist-ing, or that it occurred during Taylor’s week-long vacation following his injury. Taylor’s brief, however, addresses these issues together, and as each essentially goes to elements of a single overriding issue, we condense Taylor’s issues into one: whether the decision of the Commission is supported by substantial credible evidence.
 

 STANDARD OF REVIEW
 

 ¶ 12. The decision of the Commission is afforded great deference, and facts determined by it may not be disturbed on appeal if those facts are supported by substantial credible evidence.
 
 Atlas Roll-Lite Door Corp. v. Ener,
 
 741 So.2d 343, 346(¶ 8) (Miss.1999). A Commission decision that is supported by substantial evidence may not be overturned even if, were this Court acting as fact-finder, we would have reached the opposite conclusion.
 
 Vance v. Twin River Homes, Inc.,
 
 641 So.2d 1176, 1180 (Miss.1994). In other words, “this Court will reverse the Commission’s order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.”
 
 Chestnut v. Dairy Fresh Corp.,
 
 966 So.2d 868, 870(¶ 2) (Miss.Ct.App.2007) (quoting
 
 Barber Seafood, Inc. v. Smith,
 
 911 So.2d 454, 461(¶ 27) (Miss.2005)).
 

 ¶ 13. “[A] finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the [Workers’ Compensation] Act.”
 
 J.R. Logging v. Halford,
 
 765 So.2d 580, 583(¶ 13) (Miss.Ct.App.2000). “Where no evidence or only a scintilla of evidence supports a Worker’s Compensation Commission decision, this Court does not hesitate to reverse.”
 
 Foamex Prods., Inc. v. Simons,
 
 822 So.2d 1050, 1053(1111) (Miss.Ct.App.2002).
 

 WHETHER THE COMMISSION’S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE
 

 ¶ 14. Taylor presents numerous arguments attacking the analysis of the ALJ, whose memorandum opinion cited numerous reasons for favoring the testimony of Wilkins and Dr. Wolfson over Taylor and Dr. McCloskey. Among these were Taylor’s equivocal testimony regarding whether the injury happened during a day shift or a night shift; his acknowledged awareness of the need to report injuries promptly; his past history of promptly reporting a disc-herniation injury notwithstanding that he initially believed it to be a pulled muscle; the fact that Taylor had an opportunity to report the injury when he met with Wilkins; and Taylor’s complaints of shoulder pain in the months preceding the alleged injury. Taylor argues that he adequately explained these inconsistencies,
 
 *164
 
 and that the evidence preponderates in favor of awarding benefits.
 

 ¶ 15. Our standard of review, however, is clear. We have held:
 

 It is not within the realm of a reviewing court’s authority to re-weigh the evidence to determine whether the preponderance of evidence might favor a result contrary to the Commission’s determination. So long as the record contains credible evidence which, if believed, would support the Commission’s determination, we must affirm.
 

 McCarty Farms, Inc. v. Banks,
 
 773 So.2d 380, 387(¶ 29) (Miss.Ct.App.2000) (internal citations and quotations omitted). At issue is only whether substantial evidence supports the Commission’s decision finding no compensable injury.
 
 Id.
 

 ¶ 16. In reviewing the record, we find that it does. While Taylor did testify that he was injured on the job, the employer and carrier produced substantial evidence that he was not. Specifically, Dr. Wolfson testified that Taylor’s injury would have immediately caused severe pain that could not be relieved by resting or be mistaken for a pulled muscle. He also opined that Taylor could not have continued to work immediately after suffering the injury. While it is true that Taylor testified the injury occurred at the end of his shift, Wilkins testified that the safety drill-and thus the injury — occurred in the middle of a twelve — hour shift. Wilkins also testified that he spoke with Taylor immediately following the safety drill, and that Taylor did not manifest the discomfort Dr. Wolf-son testified that he would have suffered at that time, if the injury had occurred only minutes before. Considering this testimony, we find that the Commission’s decision to be supported by substantial, credible evidence. This issue, therefore, is without merit.
 

 ¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Dr. McCloskey noted that the sixty-one-year-old Taylor also suffered from a pre-existing herniation of another disc, L5, as well as hypertension, diabetes, and coronary artery disease.
 

 [2]
 

 . The air tank was part of an emergency breathing apparatus worn on the back. Taylor and Wilkins agreed that it would be removed from the cabinet by backing up to the tank, strapping it on, and lifting it away from the cabinet while strapped to the body; however, the two differed as to how it would be returned to the cabinet. Wilkins testified that the air tank would be backed into the cabinet while still strapped to the body, but Taylor stated that this was impractical and that he and other employees would remove the air tank from their bodies before returning it to the cabinet.