MODIFIED OPINION ON MOTION FOR REHEARING
GRIFFIS, P.J.,
FOR THE COURT:
¶ 1. The motion for rehearing is denied. The previous opinion of this Court is withdrawn, and this opinion is substituted in its place.
¶2. Matthew Ladner appeals the decision of the Mississippi Workers’ Compensation Commission (Commission) denying his claim for permanent-partial-disability benefits. The Commission overturned the ruling by the administrative judge (AJ) that Ladner’s former employer, Zachry Construction, and its insurance carrier, Zurich American Insurance Company (collectively “Zachry”), owed Ladner disability payments. Finding Ladner proved his permanent-partial disability, this Court reverses and renders.
FACTS
¶ 3. On December 27, 2006, Ladner injured his lower back while working for Zachry. Ladner returned to work a few days after the incident, but continued to experience pain. On January 31,2007, Lad-ner visited Dr. Kevin Cooper. Dr. Cooper diagnosed Ladner with a lumbar strain, but concluded that Ladner did not need surgery and allowed him to return to work under light or regular work duties as tolerated. Ladner returned to Dr. Cooper on February 9 and February 16, 2007. An MRI conducted on February 27, 2007, indicated a slight narrowing at T10-11, a slight bulge at L4-5, and minimal protrusion at L5-S1. Based on the MRI results, Dr. Cooper referred Ladner to Dr. Lee Kesterson, a neurosurgeon.
¶4. On March 15, 2007, Dr. Kesterson evaluated Ladner. Dr. Kesterson concurred with Dr. Cooper’s diagnosis of a lumbar strain, recommended physical ther *583 apy, and released Ladner for light-duty work. Ladner saw Dr. Kesterson again on May 7, 2007, and June 26, 2007. Dr. Kes-terson recommended continued physical therapy and conditioning. On July 30, 2007, a functional capacity exam (FCE) indicated that Ladner could function in the medium range of physical ability for work duties.
¶ 5. On September 25,2007, and January 15, 2008, Ladner returned for follow-up visits with Dr. Kesterson. On March 28, 2008, Ladner underwent a lumbar discography, which did not reveal any problems warranting surgery. Ladner returned to Dr. Kesterson on May 2, 2008, and on May 7,2008, a second FCE showed that Ladner remained at a medium-range physical ability for work.
¶ 6. On May 20, 2008, Dr. Kesterson concluded Ladner met his maximum medical improvement (MMI). Dr. Kesterson assessed Ladner with a five-percent impairment to his body as a whole and issued permanent work restrictions. Ladner did not seek any further medical treatment for his back pain other than pain management from his family-medicine doctor, Dr. James Crittendon.
¶7. Ladner continued to work for Za-chry after reaching MMI. On or around December 1, 2008, Zachry laid off Ladner, along with other workers. Ladner remained unemployed until June 2011, when he gained employment at King Construction. In January 2012, Ladner voluntarily left King to work for Science Applications International Corporation (SAIC) at the Stennis Space Center. SAIC hired Ladner as a full-time employee in August 2012, where he remained employed as of the time of the AJ’s order.
PROCEDURAL HISTORY
¶ 8. On August 24, 2009, Ladner filed his petition to controvert. The AJ heard the arguments of the parties and found Lad-ner was entitled to benefits. This decision was appealed to the Commission, which overturned the AJ’s decision. The Commission found that the two-year statute of limitations for filing a claim precluded Ladner’s petition. Ladner appealed to the Harrison County Circuit Court, First Judicial District. On February 23, 2012, the circuit court affirmed the Commission’s judgment, and this Court affirmed the circuit court’s order on May 14,2013.
¶ 9. On January 30, 2014, the Mississippi Supreme Court reversed this Court’s judgment and held that though Ladner received post-injury wages, the wages were in lieu of workers’ compensation for his injury. See Ladner v. Zachry Const. (Ladner I), 130 So.3d 1085, 1089 (¶ 15) (Miss. 2014). As such, the supreme court ruled that Ladner filed his petition to controvert within the two-year period because the wages in lieu of compensation tolled the statute of limitations. Id.
¶ 10. This appeal arises from the second set of proceedings after the supreme court remanded the case. On remand, the AJ allowed additional discovery and conducted a hearing on October 8, 2014. On December 12, 2014, the AJ ruled that Ladner was entitled to permanent-partial benefits of $128.01 per week for 450 weeks. Zachry appealed the AJ’s order to the full Commission.
¶ 11. On June 24, 2015, the Commission, in a 2-1 decision, reversed the AJ’s order and found that Ladner failed to prove a loss of wage-earning capacity to sustain a claim for permanent-partial disability. The Commission further ruled that Ladner failed to demonstrate his termination from Zachry and his period of unemployment were causally related to his on-the-job injury. The dissenting commissioner asserted' that Ladner’s FCE as *584 sessment of medium-duty work, the testimony, his termination, his reasonable job search, and his lower post-injury wages supported a finding of a loss of wage-earning capacity. .
¶ 12. Ladner appeals the Commission’s order and asserts that the Commission’s decision was arbitrary and capricious, not supported by the substantial evidence, and contrary to the law.
STANDARD OF REVIEW
¶ 13. “The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law.” Concert Sys. USA Inc. v. Weaver, 33 So.3d 1186, 1188 (¶ 10) (Miss. Ct. App. 2010) (citing Weatherspoon v. Croft Metals Inc., 853 So.2d 776, 778 (¶ 6) (Miss. 2003)). When the issue involves a question of law, however; the review is de novo. Davis v. Clarion-Ledger, 938 So.2d 905, 907 (¶5) (Miss. Ct. App. 2006) (citing Shelby v. Peavey Elecs, Corp., 724 So.2d 504, 506 (¶ 8) (Miss. Ct. App. 1998)).
ANALYSIS
¶ 14. Ladner argues • the Commission erred in reversing the-AJ’s order because he demonstrated a prima facie case for permanent-partial disability, which Zachry failed to rebut. Zachry counters that Lad-ner did not prove a prima facie- case of disability; thus, the burden remained on Ladner to prove a loss of wage-earning capacity.
¶ 15. “It is well settled that workers’ compensation claimants have ‘the burden of proving disability and the extent thereof.’” Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1165 (¶ 21) (Miss. Ct. App. 2010) (quoting Lifestyle Furnishings v. Tollison, 985 So.2d 352, 359 (¶ 21) (Miss. Ct. App. 2008)). “‘Disability’ means incapacity because of injury to earn the wages which the employee was-receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Miss.. Code Ann. § 71-3-3(i) (Rev. 2011).
¶16. “The concept of disability has components of both a physical injury and a loss of- wage-earning capacity.” Smith, 43 So.3d at 1165 (¶ 19) (citation omitted). “In order to meet the definition of disability, the claimant must not be able to obtain work in similar or other jobs, and the claimant’s unemployability' must be due to the injury in question.” Id. (citing Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 828 (Miss. 1991)). Further, “[o]nce the claimant has made out a prima facie case, the employer assumes the burden to prove otherwise by showing that the claimant’s efforts constituted [a] mere sham or unreasonable effort.” Taplin, 586 So.2d at 828. Therefore, this Court must determine whether Ladner proved both his physical injury and his loss of wage-earning capacity to demonstrate disability.
¶ 17. The parties.stipulated that Ladner suffered a work-related injury on December 27, 2Q06, and reached MMI on May 20, 2008. To support his claim, Ladner submitted his medicaT records from Drs. Cooper and Kesterson from the time of his injury until MMI. Prior to his MMI, Ladner underwent two FCEs that indicated Ladner could only perform medium-duty work. Further, Dr.' Kesterson released Ladner for work with several restrictions, such as no stooping, bending, or squatting and no lifting over fifty-five pounds, Dr. Kester-son also assessed Ladner with a five-percent permanent impairment to his body as a whole.
¶ 18. Ladner presented this evidence through his medical records from Drs. Cooper and Kesterson. Ladner also testi *585 fied to the extent of his injuries at a hearing on March 31, 2010, a deposition on May 5, 2014, and a second hearing on October 8, 2014. At the March 31, 2010 hearing, Ladner stated that he remained in the safety trailer for the majority of his employment, that he never returned to his normal work duties after the injury, and that he continued seeking pain management from Dr. Crittendon.
¶ 19. To rebut Ladner’s testimony, Za-chry proffered two witnesses to attest to Ladner’s work duties. The witnesses, Ian Devlin and Frank Young, testified that Ladner did not remain in the safety trailer as often as he stated and that Ladner performed other duties at the site. But their testimony did not contradict Ladner’s evidence that he did not return to his regular duties. Further, Zachry failed to present any evidence that disputed Lad-ner’s medical evidence. Therefore, Ladner presented sufficient evidence to establish his impairment.
¶ 20. Impairment alone, however, does not entitle Ladner to benefits. In addition to the medical evidence, “[disability is determined by comparing the employee’s pre-injury wages with the employee’s post-injury capacity to earn wages in the open labor market.” Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218 (¶ 31) (Miss. Ct. App. 2005) (citing Karr v. Armstrong Tire & Rubber Co., 216 Miss. 132, 137, 61 So.2d 789, 792 (1953)). “[Actual post-injury earnings will create a presumption of earning capacity commensurate with them but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity.” Cox v. Int’l Harvester Co., 221 So.2d 924, 926 (Miss. 1969) (citation omitted).
¶ 21. Zachry contends that Lad-ner remained employed after his MMI date and . until December 1, 2008, when Zachry laid off several workers, not just Ladner. This, according to Zachry, created a presumption that Ladner earned wages commensurate with his preinjury wages. However, this presumption is rebutted by demonstrating the wages are unreliable due to “[an] increase in general wage levels since the time of [the] accident; [the] claimant’s own greater maturity or training; longer hour's worked by [the] claimant after the accident; payment of wages disproportionate to capacity out of sympathy to [the] claimant; and the temporary and unpredictable character of post-injury earnings.” Omnova Sols. Inc. v. Lipa, 44 So.3d 935, 941 (¶ 17) (Miss. 2010) (quoting Russell v. Se. Utils. Serv. Co., 230 Miss. 272, 282, 92 So.2d 544, 547 (1957)).
¶ 22. To overcome this presumption, Ladner argues the wages are unreliable because he could not perform his previous job duties and Zachry paid him wages in lieu of compensation. The supreme court’s ruling in Ladner I held that Zachry paid Ladner wages in lieu of compensation at least until he reached MMI, Ladner I, 130 So.3d at 1089 (¶ 15), and there is no substantial evidence in the’record that'this changed during the less than seven months that followed between Ladner’s MMI and termination dates. Thus, the fact that Lad-ner received wages from Zachry after his MMI date does not create a presumption of no loss of wage-earning capacity.'Therefore, this Court must determine Ladner’s loss of wage-earning capacity as of his December 2008 layoff.
¶23. To determine loss of wage-earning capacity, “[t]he Commission considers the employee’s actual wages earned prior to the injury as compared to the employee’s capacity to earn those same wages after the injury, as well as other factors such as the employee’s .age, edu *586 cation, training and work experience, and his or her ability to return to the same or other employment.” Airtran Inc. v. Byrd, 953 So.2d 296, 301 (¶ 11) (Miss. Ct. App. 2007) (citing DeLaughter v. S. Cent. Tractor Parts, 642 So.2d 375, 379 (Miss. 1994)).
¶ 24. At the time of the October 8, 2014 hearing, Ladner was forty-seven years old and worked in maintenance. The parties stipulated that Ladner earned $728 per week compared to the $920 per week he earned at Zachry. Ladner testified that Zachry continued to employ him from his date of MMI until December 1, 2008, but he remained in the safety trailer nearly ninety-five percent of the time, which indicated his inability to work at his preinjury status. Further, Ladner testified he could not find employment within his work restrictions for several years and his current employer accommodates his restrictions. Based on this evidence, Ladner showed that his impairment related to his reduction of wages and resulted in a loss of wage-earning capacity.
¶25. The Commission, however, found that Ladner’s lower wages did not relate to his injury. The Commission relied on Zachry’s contention that Ladner did not remain in the safety trailer ninety-five percent of the time because witnesses testified that Ladner performed other duties. In the first hearing, Devlin and Young testified that Ladner performed other tasks such as “hole watching” and “filing.” But neither Devlin nor Young could contradict Ladner’s testimony, as neither knew the exact extent of Ladner’s work after his injury or after his MMI date. Thus, Za-chry did not rebut Ladner’s assertion that his disability was work-related.
¶ 26. Further, Ladner testified that he never returned to his preinjury duties, and he could not find employment at the same pay rate that he earned at Zachry. “If, because of the subject injury, the employee cannot secure employment at pre-injury pay, then the employee may be entitled to disability payments.” Taplin, 586 So.2d at 828 (citing Piper Indus. Inc. v. Herod, 560 So.2d 732, 734-35 (Miss. 1990)). Piper is instructive.
¶ 27. In Piper, the claimant (Herod) suffered from contact dermititis he suffered from exposure to sulfur dioxide at his job at Piper. Piper, 560 So.2d at 733-34. Medical evidence demonstrated that the job caused the dermititis and Herod could no longer work at Piper. Based on this, the supreme court affirmed the Commission’s findings that Herod was permanently partially disabled. Id. at 734. The Piper court further concluded that Herod’s lower wages in a different occupation coupled with his inability to obtain a job in the same industry as Piper entitled him to permanent-partial disability payments due to this loss of wage-earning capacity. Id. at 735.
¶ 28. Like in Piper, Ladner did not return to his preinjury duties and could not work in the same occupation as before. Ladner testified that he searched for jobs until finding a job with King Construction, but had to leave that position due to his impairment and work restrictions. Ladner also stated that his current job in maintenance accommodates his work restrictions and essentially constitutes light-duty work. Further, Zachry failed to rebut this testimony, Ladner’s work restrictions, or any medical evidence to overcome Ladner’s prima facie case of permanent-partial disability from the time of his layoff in 2008 to the present.
¶29. The substantial evidence demonstrated that Ladner proved a work-related injury, he suffered a loss of wage-earning capacity resulting in permanent-partial *587 disability, and the injury related to his disability. Further, Zachry failed to rebut Ladner’s prima facie case of disability. For these reasons, we reverse the Commission’s order. We further render the case and reinstate the order of the AJ awarding Ladner $128.01 per week for 450 weeks and medical-treatment expenses.
¶ 30. REVERSED AND RENDERED.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.