# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-WC-01219-COA

**MILES MEEK**                                            **APPELLANT**

**v.**

**CHEYENNE STEEL, INC. AND AMERICAN**          **APPELLEES**
**INTERSTATE INSURANCE COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2021 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER HEDERI NEYLAND |
| ATTORNEY FOR APPELLEES: | MATTHEW JASON SUMRALL |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 10/11/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Miles Meek appeals the Mississippi Workers' Compensation Commission's determination that he did not suffer a compensable injury. Finding the Commission's order is supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Meek sustained an admitted injury during the course and scope of his employment on December 13, 2018. Meek began his employment with Cheyenne Steel, Inc. on August 21, 2017, as a steel connector/iron worker. He constructed steel buildings by welding beams and columns together. He also "ran decking" where he welded together pieces of steel to form a floor and then poured concrete over the decking. He was responsible for "rigging" his own

supplies (where his work tools/supplies were sent up the structure by cranes). Meek climbed structures with the use of ladders or lifts. The lifts required sitting on beams (like riding a horse) while welding pieces of steel. He used safety equipment provided by the employer which included safety harnesses that weighed approximately fifty-five to eighty-five pounds (connecting him to beams or other structures), safety glasses, gloves, boots, et cetera. For maneuvering heavy materials/supplies such as steel beams and joists, he used a forklift (also known as a man lift).

¶3.     On the day of his injury, Meek walked on a beam to run decking. For safety purposes, he was tied to a column at foot level. He tripped and fell twenty feet from the beam, striking a man-lift on the way down. An ambulance took him to the University of Alabama at Birmingham Hospital (UAB). Meek complained of injuries to his right hip and shoulder, scrotum, penis, arm, and left wrist. While at UAB, Meek was given a preliminary drug screen that tested positive for marijuana. Dr. Donnis Harrison treated Meek's shoulder. Meek saw Dr. Daniel Wittersheim and Dr. Matthew Lewis for the injury to his hip. Dr. Richard Lyell treated the injuries to his groin area. Meek also saw Dr. Charles Winters for issues with his back. Based on Meek's average weekly wage of $884.96, Cheyenne began paying temporary total-disability benefits and permanent partial-disability benefits. Meek reached maximum medical improvement (MMI) on October 7, 2019, with regard to his hip, and Dr. Wittersheim assigned a zero-percent impairment rating. This was later changed to a two-percent impairment rating based on the results of a functional capacity examination. Dr. Harrison then assigned a six-percent permanent partial-impairment rating but released

2

Meek with light-duty restrictions and a twenty-five-pound lifting restriction pertaining to his shoulder on October 21, 2019. After Meek returned to work, he said Cheyenne did not accommodate his restrictions. Jason Hillier, co-owner and vice-president of Cheyenne, testified that the corporation attempted to accommodate Meek's restrictions, but because he was "difficult" and said he could not perform the work, it terminated him in September or October 2020.

¶4. Meek filed a petition to controvert on August 6, 2019. The nature and extent of the injuries and the disability alleged were disputed, and Cheyenne pled intoxication as an affirmative defense. A hearing on the merits was held on October 12, 2020, before an administrative judge (the AJ). The parties stipulated to the date of the accident, the amount of temporary total-disability and permanent partial-disability benefits that Cheyenne already paid, the dates of MMI for Meek's shoulder and hip, and the impairment ratings assigned to each.

¶5. Meek argued that Cheyenne should have been barred from pleading intoxication as an affirmative defense because the drug-test results submitted did not contain sufficient data to raise the presumption that Meek's marijuana use was the proximate cause of his injury. In response, Cheyenne stated that it did not receive the drug-test results from UAB until the Summer of 2020 in response to a subpoena. Additionally, a positive test result and Meek's admitting to using marijuana in the past, combined, support the presumption of an intoxication defense. Meek also stated that he did not know he had tested positive for marijuana at UAB. He admitted to marijuana use but said he did not use marijuana during

the workweek or while on a job. Meek could not recall the last time he used marijuana prior to his accident, but he said it "could have been at a festival in a vehicle with someone who used cannabis and made [him] have that positive." He further explained that marijuana stays in your system for forty days. Meek disputes telling Dr. Winters that he used marijuana to help with his pain. No expert was called to testify in Meek's behalf to rebut the results of the drug screen.

¶6. On February 5, 2021, the AJ found that Meek had failed to rebut the presumption of intoxication and denied and dismissed his claim. Meek filed a petition for review by the full Commission (MWCC), and on June 20, 2021, the MWCC remanded the case to the AJ with instructions for the AJ to issue findings of fact and conclusions of law addressing whether (1) the claim was admitted because Cheyenne had paid benefits, and, if so, whether Meek had sustained industrial loss of use and permanent disability; and (2) the injury fell under the presumption of intoxication and, if so, whether Meek rebutted the presumption.

¶7. But the AJ did not issue findings of fact or conclusions of law regarding the issue of intoxication. Instead, on July 15, 2021, the AJ determined that because Cheyenne admitted that the injury occurred and paid benefits, the only issues to be decided were industrial loss of use and permanent disability. The AJ found that Meek did not prove the existence of permanent disability exceeding the two-percent impairment rating to his right hip. The right shoulder was not addressed. Meek appealed from the order, and Cheyenne cross-appealed. On October 18, 2021, the MWCC reversed the ALJ's order, stating that (1) Cheyenne had properly pled intoxication as an affirmative defense; (2) Meek had presented no evidence that

4

misled him or caused him to make any decisions to his detriment; and (3) the payment of benefits did not prohibit Cheyenne from asserting an intoxication defense. The MWCC found that Meek's intoxication was the proximate cause of the injury and dismissed his claim. Meek appeals the MWCC's finding, arguing that (1) the MWCC's decision is inconsistent with its prior decisions; (2) the MWCC erred in its application of the Mississippi Code as it pertains to drug testing; (3) the MWCC should have held that Cheyenne was barred from raising intoxication as a defense because the employer had paid benefits; and (4) the MWCC erred by not finding that he suffered a 100% loss of industrial use of his right shoulder and hip.

## STANDARD OF REVIEW

¶8. "The standard of review in workers' compensation cases is limited and deferential." *Total Transp. Inc. of Miss. v. Shores*, 968 So. 2d 400, 403 (¶15) (Miss. 2007). "The Commission sits as the finder of fact, and it is the ultimate judge of the credibility of the witnesses." *Miss. Loggers Self Insured Fund Inc. v. Andy Kaiser Logging*, 992 So. 2d 649, 654 (¶15) (Miss. Ct. App. 2008). We will reverse "only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." *Smith v. Johnston Tombigbee Furniture Mfg. Co.*, 43 So. 3d 1159, 1164 (¶15) (Miss. Ct. App. 2010). We review the Commission's application of the law de novo. *Lifestyle Furnishings v. Tollison*, 985 So. 2d 352, 358 (¶16) (Miss. Ct. App. 2008).

## DISCUSSION

**I. Whether the MWCC erred in holding that Cheyenne was not estopped from raising intoxication as an affirmative defense after**

5

**the employer had paid benefits.**

¶9.     Meek asserts that Cheyenne knew of the positive drug-test result as early as January 19, 2019, yet Cheyenne continued to pay him benefits after that time.  As a result, Meek argues that Cheyenne should have been estopped from asserting intoxication as an affirmative defense in response to his petition to controvert.  The MWCC held otherwise, and we affirm.

¶10.    The incident report dated January 19, 2019, and completed by Jason Phillips for Cheyenne indicates that a drug screen was performed.  However, no additional details are given.  Phillips testified that UAB did not provide him with notice of the test results, and Cheyenne did not file a petition to controvert.  No evidence indicates that Cheyenne intended to do so.  As such, Cheyenne paid the benefits to Meek as statutorily required.  Although Mississippi Code Annotated section 71-3-37 (Rev. 2021) obligates an employer to begin payment of benefits within fourteen days of an accident, unless the employer intends to controvert the right to compensation, the statute also states that an employer's failure to file "shall not prevent the employer [from] raising any defense where claim is subsequently filed by the employee . . . ." Miss. Code Ann. § 71-3-37(2) & (4); *see White v. R.C. Owen Co.*, 232 Miss. 268, 275-76, 98 So. 2d 650, 652-53 (1957).

¶11.    Rule 8(c) of the Mississippi Rules of Civil Procedure discusses when affirmative defenses should be raised.  We note that as in other civil cases, in workers' compensation cases the law does not require affirmative defenses to be raised until after an employer responds to a petition to controvert.  Rule 2.4 of the Mississippi Workers' Compensation

6

Commission states in relevant part:

> Averments contained in claimant's Petition to Controvert to which a responsive answer is required are admitted unless denied in the Answer. All affirmative defenses such as intoxication of the injured employee, willful intent to injure himself or another, statute of limitations, lack of notice, etc., must be pleaded. Unless so pleaded, they shall be deemed waived.

This is exactly what happened. In keeping with Mississippi Code Annotated section 71-3-37(4) and MWCC Rule 2.4, Cheyenne first set out affirmative defenses in its answer to the petition to controvert filed by Meek. Cheyenne also testified that it was unaware of the results of the drug test until Cheyenne subpoenaed records to prepare for the hearing on the petition to controvert. According to the law, Cheyenne had no choice but to make the compensation payments prior to Meek filing his petition to controvert. Cheyenne also attempted to accommodate Meek when he returned to work. It is equally possible that if Meek had not filed the petition to controvert, then the positive drug test would not have come to light; or if Cheyenne filed a petition to controvert instead of paying the benefits, then the drug test would have come to light. It is also possible that Meek could have been paid less or nothing at all. In any event, Cheyenne acted appropriately. The principle of estoppel does not bar its affirmative defense in this instance, and the decision of the MWCC is affirmed in this regard.

> **II. Whether the MWCC erred in its application of the Mississippi Code as it pertains to drug testing in this instance.**

¶12. Meek argues that the MWCC erred because it looked only to Title 71, Chapter 3 of the Mississippi Code pertaining to workers' compensation. Specifically, he maintains that the MWCC failed to apply the provisions found in Title 71, Chapter 7: "Drug and Alcohol

Testing of Employees." Mississippi Code Annotated section 71-7-3(1) (Rev. 2021) states "[f]or the purposes of this chapter, the election of a public or private employer to conduct drug and alcohol testing is voluntary. If an employer elects voluntarily to follow this chapter, the employer must follow all the terms of this chapter without exception." However, section 71-7-27(2) (Rev. 2021) provides that "[a]ny private employer who does not make such an election or who rescinds an election previously made will be deemed to not be conducting an employee drug and alcohol testing policy or program pursuant to the provisions of this chapter, and in that event the rights and obligations of the employer and its employees and job applicants will not in any way be subject to or affected by the provisions of this chapter . . . ."

¶13. Based on the record before us, there is no indication that Cheyenne had implemented a drug testing policy or that it requested the drug test in this instance. UAB apparently made a unilateral decision to administer the test; as such, the statutes relied on are inapplicable, here, and the decision of the MWCC is affirmed in this regard.

III. **Whether the MWCC's decision was inconsistent with its decision in *Cartwright v. Southeast Ready Mix Inc.***

¶14. Mississippi Code Annotated section 71-3-121(1) (Supp. 2016) states:

In the event that an employee sustains an injury at work or asserts a work-related injury, the employer shall have the right to administer drug and alcohol testing or require that the employee submit himself to drug and alcohol testing. If the employee has a positive test indicating the presence, at the time of injury, of any drug illegally used . . . it shall be presumed that the proximate cause of the injury was the use of a drug illegally. . . . The burden of proof will then be placed upon the employee to prove that the use of drugs illegally . . . was not a contributing cause of the accident in order to defeat the defense of the employer provided under [s]ection 71-3-7.

8

¶15. Meek contends that the MWCC failed to rely on its own precedent—Order, *Cartwright v. Southeast Ready Mix Inc.*, No. 1801171-P-7010, 2019 WL 6445683 (Miss. Workers' Comp. Comm'n Nov. 19, 2019)—and, had it done so, it would not have held that his positive drug test gave rise to a finding of presumptive intoxication based on section 71-3-121(1). We disagree.

¶16. In *Cartwright*, the employee was injured in a car accident and the EMT who responded to the scene administered morphine. Upon arrival at the hospital, Cartwright underwent surgery for a left wrist fracture and received other medications. It was only after he left the emergency room that a drug test was administered. The MWCC found, in part, that Cartwright rebutted the presumption of intoxication by submitting records showing that he was given numerous prescription medications after the accident but before the drug test.

¶17. Meek is correct that the MWCC in *Cartwright* also found the drug test results to be insufficient evidence to raise the presumption of intoxication because, among other reasons, "[t]he drug test results do not note specific levels of positive drugs in Claimant's system[.]" However, the presence of a specific level of marijuana is not what triggers the statute. Section 71-3-121(1) clearly states that if a drug test shows "the ***presence***, at the time of injury, of any drug illegally used . . . it shall be presumed that the proximate cause of the injury was the use of a drug illegally." (Emphasis added). Marijuana, being a Schedule 1 Controlled Substance, was illegal at the time of Meek's accident and no mechanism existed by which he could have legally ingested it. We find, therefore, that it was the very presence of marijuana in his system at the time that violated section 71-3-121(1). We also fail to see

9

how the application of *Cartwright* would have changed the outcome in this instance. The MWCC decision is affirmed in this regard.

**IV.    Whether the MWCC erred when it failed to find that Meek suffered 100% loss of industrial use of his right shoulder and hip.**

¶18.    The previously discussed issues are dispositive in this case, and we do not need to address the allegations of error regarding Meek's impairment rating. *See Fason v. Trussell Enters. Inc.*, 120 So. 3d 454, 459 (¶11) (Miss. Ct. App. 2013).

## CONCLUSION

¶19.    Our duty of deference to the MWCC on judicial review is justified by its experience and expertise in the interpretation and administration of the law of workers' compensation. *Smith v. Jackson Const. Co.*, 607 So. 2d 1119, 1124-25 (Miss. 1992). The denial of the petition to controvert was based on substantial evidence and is upheld.

¶20.    **AFFIRMED.**

   **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**