989 So.2d 969 (2008)
Sidney HILL, Appellant,
v.
MEL, INC. d/b/a Pure Water Solutions and Royal Indemnity Appellees.
No. 2007-WC-00509-COA.
Court of Appeals of Mississippi.
April 15, 2008.
Rehearing Denied September 2, 2008.
Ellis Turnage, Cleveland, attorney for appellant.
Stephanie A. Taylor, attorney for appellees.
*970 Before KING, C.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Sidney Hill was terminated from his job with Pure Water Solutions (PWS) after he was injured in a motor vehicle accident while working. Hill applied for workers' compensation benefits and was found to be twenty percent permanently partially disabled by the administrative law judge (ALJ) of the Mississippi Workers' Compensation Commission. Aggrieved, Hill appealed to the Full Commission, which affirmed the ALJ's decision. Hill then appealed the commission's decision to the Rankin County Circuit Court, which affirmed the commission's decision and thereby an ALJ's decision. Hill now seeks relief, claiming (1) that PWS's refusal to rehire him should have created a prima facie case of total disability, (2) that he conducted a reasonable search for employment, and (3) that the commission erred when it found that his request to supplement his appeal record was moot.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. In 1997, Hill began working for PWS, a company that purifies water for both commercial and residential purposes. Hill was driving a truck for PWS on July 26, 2001, when he was involved in an accident. While driving north on I-55, a tire came off a south-bound vehicle and came through Hill's windshield. Hill was taken to the emergency room, where he was treated for injuries to his arm and neck. PWS does not dispute that Hill sustained a work-related injury as a result of the accident. About a week after the accident, Hill returned to work for PWS performing only light duty work; shortly thereafter, Hill returned to performing the same work he had before the accident. At the time of the accident, Hill lifted 50-to-100-pound bags as part of his work. The parties stipulated that he earned $522.59 per week on July 26, 2001.
¶ 4. In October 2002, Hill went to see Dr. Patrick Barrett for persistent pain in his back and neck. On March 5, 2003, Dr. Barrett performed surgery on Hill's back at the C5-6 level. After the surgery, Hill went to physical therapy for two to three months. In August 2003, Hill went to see Dr. Barrett. Dr. Barrett noted that Hill had been evaluated and still needed an MRI of his back. Dr. Barrett opined that if the MRI showed no significant problems, Hill could probably be released to return to work full time. On September 4, 2003, Hill returned to Dr. Barrett, who found that the MRI of Hill's back indicated the need for further strengthening and rehabilitation. Dr. Barrett's notes indicate that he prescribed physical therapy and a return visit in four weeks. The doctor's notes also state that he discussed a return to work with Hill, dependent upon the improvement of Hill's back. By contrast, Hill recalls nothing about being told to come back for a follow-up appointment or about discussing an eventual return to work at PWS. Hill also stated that Dr. Barrett did not prescribe him any physical therapy.
¶ 5. In any event, Hill did not receive any medical care related to his July 26 injury from September 4, 2003, until May 4, 2004, when he again saw Dr. Barrett. Hill explained that he did not receive any medical care after September 4 because he had been told by his insurance carrier that they would not cover any additional treatment. However, there is no evidence that Hill ever contacted Dr. Barrett to tell him this. As a result, Dr. Barrett made a note on April 23, 2004, that Hill had not returned to see him and that he thus assumed *971 Hill had achieved maximum medical improvement (MMI) as of September 4, 2003. PWS sent Hill a letter on October 20, 2003, stating that he was being terminated due to changes in the organization. The letter also encouraged Hill to contact PWS once he reached MMI to assess whether he could return to work at PWS.
¶ 6. At his May 4, 2004, visit with Dr. Barrett, Hill complained of continuing pain in his back. Dr. Barrett found that Hill could return to work with light duty restrictions and prescribed a functional capacity evaluation (FCE), which was performed on June 18, 2004. The FCE found that Hill would be able to return to work with permanent medium duty restrictions, limiting his lifting to no more than thirty-five pounds and his pushing and pulling to no more than forty pounds. On July 2, 2004, Dr. Barrett released Hill from treatment and found that Hill was three percent permanently physically impaired.
¶ 7. Hill testified that he began doing intermittent automotive work in the summer of 2004. Hill stated that this work was only sporadic, although there is no evidence that he pursued other employment. On February 21, 2005, Hill's attorney sent a letter to PWS inquiring about any positions they might have available matching Hill's work restrictions. On February 25, PWS responded that all positions matching Hill's restrictions had been filled. Hill testified that he would have been happy to return to PWS if a position had been available for him.
¶ 8. From April 5, 2005, to April 13, 2005, Hill applied for positions with nine prospective employers. No offers of employment resulted from his effort. On August 10, 2005, Hill accepted a position as a bus driver for the Rankin County School District at a weekly rate of $185.51. During August and early September 2005, Hill received three letters identifying prospective employers found by Todd Edwards, PWS's vocational rehabilitation expert. Hill stated that he contacted all of the employers, many of whom he claims were not hiring when he called them. Hill was not able to find a job with the employers suggested by Edwards.
¶ 9. The ALJ ruled that Hill had reached MMI on May 5, 2004, one day after his appointment with Dr. Barrett. That date is not contested by either party. The ALJ found that Hill's job search was "barely sufficient" and found that he suffered from a twenty percent permanent partial disability. Accordingly, the ALJ awarded Hill $69.68 per week for 450 weeks. Aggrieved, Hill appealed to the commission, which affirmed the findings of the ALJ. Hill further appealed to the Rankin County Circuit Court, which affirmed the findings of the ALJ and the commission.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Presumption
¶ 11. At the outset, we note that we will reverse a decision made by the commission "only for an error of law or an unsupported finding of fact." Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 743(¶ 8) (Miss.2002) (citing Georgia Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991)). "Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." Id. at 743-44(¶ 8) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992)).
¶ 12. Hill contends that he is entitled to a presumption that he is permanently *972 totally disabled as a result of PWS's refusal to rehire him. In general, when a claimant who has been found to be permanently partially disabled reaches "maximum medical recovery, reports back to the employer for work, and the employer refuses to reinstate or rehire him, then the claimant has established a prima facie showing of total disability." Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1226 (Miss.1997).
¶ 13. We need not reach the question of whether Hill reported back to PWS because Hill is clearly not totally disabled. In McDowell v. Smith, 856 So.2d 581 (Miss.Ct.App.2003), this Court came to the conclusion that "[t]he post-injury capacity to earn wages at other employment, even at a diminished level, is enough to defeat a claim for permanent total disability." McDowell, 856 So.2d at 585(¶ 12). However, in McDonald v. I.C. Isaacs Newton Co., 879 So.2d 486 (Miss.Ct.App.2004), this Court reached the opposite conclusion and found that a claimant was totally disabled due to her inability to earn the same wages that she had prior to her injury. McDonald, 879 So.2d at 490-91 (¶¶ 19-24).
¶ 14. We recognize that the results reached in these two opinions are contrary, and we have not found any Mississippi Supreme Court opinion germane to the question of whether diminished wages suffice to defeat a claim of permanent total disability. We find today that the better rule is that the ability to earn post-injury wages, even significantly diminished post-injury wages, defeats a claim of permanent total disability.
¶ 15. Hill currently works as a school bus driver and also occasionally works as a car mechanic and tow truck operator. As the ALJ found, it is unknown how many hours per week Hill works at any particular job, or what sort of income he receives from his work as a car mechanic and tow truck operator. In Jensen, the Mississippi Supreme Court noted that the presumption in scheduled-member compensation cases "arises when the claimant establishes that he has made a reasonable effort but has been unable to find work in his usual employment...." Jensen, 828 So.2d at 747-48(¶ 21). Jensen further defined "usual employment" as "the jobs in which the claimant has past experience, jobs requiring similar skills, or jobs for which the worker is otherwise suited by his age, education, experience, and any other relevant factual criteria." Id. at 747(¶ 20). In the present case, Hill has found employment meeting the "usual employment" standard set out in Jensen. He currently drives a school bus, which is a job requiring similar skills to his job at PWS, and his past experience, education, and training have prepared him to work as a mechanic and tow truck operator.
¶ 16. We find particularly relevant the following passage from Jensen:
[T]he purpose behind the Workers' Compensation Law is to share amongst workers, employers, and consumers the burden of supporting those whose ability to work is seriously diminished or eliminated.... For this Court to award those benefits which are meant to compensate for an inability to work, even though the worker in fact is able to secure employment at a comparable or even greater salary, would bestow a windfall contrary to the specific beneficial and remedial purpose of workers' compensation.
Id. at 749(¶ 24). While Hill is not earning a greater salary now than he did prior to his injury, allowing him to receive total disability when he is in fact partially disabled would grant him a "windfall contrary to the specific beneficial and remedial purpose of workers' compensation." Id. Therefore, we do not find that the ALJ erred when he found that Hill was twenty *973 percent permanently partially disabled. Although the ALJ did not specifically discuss the presumption, we find that the same result would have been reached if the ALJ had addressed the presumption. In the absence of something more compelling, we decline to find that the commission's findings, which affirmed the findings of the ALJ, were without substantial evidence.

2. Reasonable Efforts to Find Employment
¶ 17. Hill contends that he undertook reasonable efforts to find employment after his attempt to return to work at PWS. We find this contention of error moot, as the commission ruled in favor of Hill on this issue.

3. Motion to Supplement and Allow Additional Evidence
¶ 18. Hill claims that the commission erred when it disallowed additional evidence because it had already ruled on Hill's claim. We agree that the commission erred in finding that it could not supplement the record and allow additional evidence. Whether to do so is wholly within the commission's discretion, and it could have granted Hill's motion if it chose to do so. However, we find that any error on the part of the commission is harmless. Having reviewed the evidence that Hill sought to introduce, we note nothing that could have changed the outcome of Hill's claim. Additionally, in his motion, Hill failed to explain why the additional evidence was necessary for the commission to review, as is required by Procedural Rule 9 of the Rules of the Mississippi Workers' Compensation Commission.
¶ 19. This contention of error is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.