BARNES, J.,
for the Court:
¶ 1; Howard Industries Inc. (Howard Industries) appeals the Mississippi Workers’ Compensation Commission (Commission) order, which affirmed the administrative judge’s (AJ) award of permanent total disability benefits to Bennie Satcher. The sole issue before the AJ was the extent of the loss of wage-earning capacity attributable to Satchér’s work-connected injury. We find no error with the Commission’s ruling and affirm.'
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On December 8, 2011, Satcher filed a petition to controvert, stating he injured his neck,, shoulder, and arm while lifting and pulling at his welding-job at Howard Industries on September 15, -2010. At the time of the injury, Satcher was forty-eight years old. He has resided at the same address in Heidelberg, Mississippi, for nearly his entire life. He completed the eleventh, grade but never received his high-school diploma. Satcher has no other formal education.
¶ 3. After his injury, Satcher received treatment from several physicians. Satcher saw Dr. Jack McHenry, his family physician, after injuring his neck at.work in September 2010. Dr. McHenry referred him to Dr. David Malloy. In March 2011, an MRI showed a herniated cervical disc. Dr. Malloy tried to treat Satcher conserva-: tively with physical therapy. In February 2012, Dr. Rahul Vohra performed an independent medical examination on Satcher, and referred him to Dr. Jack Moriarity. In July 2012, Dr. Moriarity performed a cervical fusion on Satcher.
¶4. On February 11, 2013, Dr. Vohra determined Satcher had reached maximum medical improvement (MMI), and assessed permanent work restrictions in accordance with Satcher’s functional-capacity evalúa *910 tion (FCE). Satcher was released to do medium-duty work, and limited to the rare lifting of no greater than forty pounds. Dr. Vohra assigned an eleven-percent impairment rating to Satcher’s body as a whole as a result of his work injury and surgery. Satcher testified that he takes Lortab and Percocet up to three times a day for pain. Satcher attempted to return to his welding job in April 2013, but he could not tolerate wearing his required protective face shield due to neck pain. Because of the pain, Satcher was medically restricted from work as a welder, and Howard Industries did not offer him any other employment.[1]
- ¶-5. In May 2013, Howard Industries retained Brawner & Associates (Brawner), a vocational-services company, to evaluate Satcher for post-injury employability and wage-earning capacity. Satcher testified that he had previously worked as a floor hand, derrickhand, and roughneck on oil-drilling rigs, a welder for other companies, a. concrete-sidewalk finisher for the City of Laurel, and in' the maintenance department at Sanderson Farms. However, all of these jobs required- him to lift more than forty pounds. Previously, Satcher had a commercial driver’s license, but it was. suspended because of his failure to pay child support.
¶ 6. Angela Malone, a vocational counsel- or with Brawner, testified at Satcher’s AJ hearing and'was recognized as an expert in vocátional rehabilitation. ‘ In November 2013, after a' personal interview with' Satcher, Malone found him employable based on his physical capabilities and FCE. Earlier that year, in July and August, Brawner had begun sending Satcher’s attorney employment suggestions within Satcher’s physical capabilities. Satcher waited until October to begin applying to some of these jobs, but never found employment. Malone tendered approximately twenty-six jobs to Satcher, including work as a salesperson, delivery person, auto salesperson, dispatcher, hotel desk clerk, and oil-lube technician — all jobs for which Satcher had no experience. Malone testified that it was her opinion Satcher was capable of earning $10.93 an hour in the qpen labor market,[2]
¶ 7. One of the jobs Satcher had applied for through the WIN Job Center in Laurel was reemployment at Howard Industries. Isaac Garrison, human-resources manager for Howard Industries, testified that he received Satcher’s application from the center a few weeks prior to Satcher’s AJ hearing. Garrison noticed on Satcher’s new application that he had previously been convicted of aggravated assault. Since 2007, it has been Howard Industries’ policy to prohibit the hiring of individuals convicted of certain violent crimes, including aggravated assault. When Garrison checked Satcher’s original employment application from 2008, he discovered Satcher had stated that he pleaded guilty to a crime, but he did not specify which crime. Garrison admitted that Howard Industries failed to investigate the issue in 2008, and Satcher had been allowed to work there for four years in violation of the company’s policy. It is unclear from the record, but at some point either before or after this discovery, Satcher was terminated from Howard Industries. Satcher had not secured or maintained full-time employment *911 since he reached MMI on February 1, 2013.[3]
¶ 8. In March 2014, after a hearing on the matter, the AJ found that Satcher had a total loss of wage-earning capacity due to his work-connected injury on September 15, 2010. Satcher was awarded total disability benefits of $422.31 per week for 450 weeks beginning on the date of the injury. Satcher was also awarded all medical services and supplies for his recovery under the statutory medical-fee schedule. The AJ considered Satcher’s age, education, permanent work restrictions, the testimony of Malone, the FCE, loss of access to the job market, Sateher’s geographic location, his past work experience, his incapacity to return to his past jobs, his reasonable but unsuccessful job search, and his lack of computer, clerical, or sales experience. The AJ also noted that Howard Industries did not reemploy Satcher because it contended he falsified his 2008 employment application; yet, when Satcher was initially hired, it did not question his omission of the aggravated-assault charge.
¶ 9. In November 2014, the Commission, in a vote of two to one, affirmed the order of the AJ and incorporated her findings. It also provided additional analysis to support its decision. Satcher’s hourly wage at the time of his injury was $12.98, or $519.20 per week, but the parties stipulated to an average weekly wage of $837.09, meaning Satcher consistently earned $317.89 per week in overtime. Testimony from Malone indicated Satcher had a sixty percent loss of access to the job market but he would be competing with individuals with a high-school diploma or higher. Also noted was the fact Howard Industries did not offer Satcher another job within. his physical restrictions. Rather than retain Satcher in “some accommodated capacity,” Howard Industries hired vocational experts to find other jobs for him. The Commission stated:
Considering the Employer’s refusal to mitigate its exposure in this case by retaining the Claimant in a different position within his restrictions, the Commission finds that the weight of the vocational experts’ opinions that appear to contradict that of the other is less compelling and carries less weight than the Claimant’s valid, unsuccessful job search. The Employer has essentially taken the position that the Claimant is not disabled and can work, just not for the Employer.
The Commission went on to find that the vocational testimony did not carry great weight, and “the reality is that the Claimant has not found any post-injury employment at the same rate of pay or even a diminished rate of pay.”
¶ 10. Howard Industries timely appealed to this Court.
STANDARD OF REVIEW
¶ 11. The standard of review in workers’ compensation cases is limited. Weatherspoon v. Croft'Metals, Inc., 853 So.2d 776, 778 (¶ 6) (Miss.2003). “The Commission is the trier' and finder of facts in a compensation claim— Reversal is proper only when a Commission’s order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law.” Id. (citations omitted). The reviewing court cannot “re-weigh the evidence to determine whether the preponderance of evidence might favor a result *912 that is contrary to the Commission’s determination.’ ” Hollingsworth v. I.C. Isaacs & Co., 725 So.2d 251, 254 (¶ 11) (Miss.Ct.App.1998) (citation omitted).
ANALYSIS
¶ 12. Howard Industries argues the Commission erred in finding Satcher suffered a permanent and total disability. Additionally, it argues the Commission should have followed the authority of Hill v. Mel, Inc., 989 So.2d 969, 972 (¶14) (Miss.Ct.App.2008), which held that “the ability to earn post-injury wages,” even if “significantly diminished[,] ... defeats a claim of permanent total disability.” We discuss each issue in turn.
I. Permanent Total Disability Benefits
¶ 13. “Disability” is defined as an “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which ... must be supported by medical findings.” Miss.Code Ann. § 71-8-3© (Rev.2011). “[T]he concept of disability comprises a physical injury coupled with a loss of wage-earning capacity,” Ameristar Casino-Vicksburg v. Bawls, 2 So.3d 675, 680 (¶20) (Miss.Ct.App.2008) (quoting I. Taitel & Son v. Twiner, 247 Miss. 785, 792, 157 So.2d 44, 46 (1968)). Factors considered for loss of wage-earning capacity include: “the amount of education and training that the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.” Lott v. Hudspeth Ctr., 26 So.3d 1044, 1049 (¶ 16) (Miss.2010) (citations omitted). Here, it was undisputed that Satcher was disabled; the disputed issue was whether he was permanently and totally disabled.
¶ 14. To establish a prima facie case for permanent total disability, the claimant has the burden to show he has sought and “been unable to find work in the ‘same or other employment.’ ” Lifestyle Furnishings v. Tollison, 985 So.2d 352, 359-60 (¶ 21) (Miss.Ct.App.2008) (citing Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1226 (Miss.1997)). The claimant must show he took “reasonable efforts to find other employment.” Id. (citing Thompson v. Wells-Lamont Corp., 362 So.2d 638, 641 (Miss.1978)). The claimant can also establish a prima facie case for total disability if, after reaching MMI, the claimant “reports back to the employer for work and the employer refuses to reinstate or rehire [him].” Id. (citing Hale, 687 So.2d at 1226). After the claimant makes out a prima facie case, the burden shifts to the employer to rebut or refute the claimant’s evidence by showing the claimant’s efforts were not reasonable or were a sham. Id. at 360 (¶ 22); Adolphe Lafont USA, Inc. v. Ayers, 958 So.2d 833, 839 (¶ 18) (Miss.Ct.App.2007). The issue of whether a claimant’s permanent disability is partial or total is a question of fact determined by the evidence as a whole, including both lay and medical testimony. McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991).
¶ 15. The Commission found Satcher met his burden for a prima facie case of permanent total disability. We agree. Satcher reached MMI on February 11, 2013, and returned to work in April 2013. However, because he could not tolerate the weight and position of the face shield he was required to wear as a welder, Dr. Vohra restricted him from using it. Thus, Satcher could not work as a welder. Instead of offering Satcher other employment that he could perform, Howard Industries hired vocational experts to find other jobs for him that were not with the company. As the Commission noted, *913 Howard Industries refused “to mitigate its exposure ... by retaining [Satcher] in a different position within his restrictions.”
¶ 16. Moreover, Howard Industries did not offer Satcher other employment from April 2013, when he was restricted from working as a welder, to November or December 2013, when Satcher was terminated for “falsifying” his original employment application in 2008 when he failed to specify his felony conviction. And yet Howard Industries never investigated the missing information on his in initial application, in spite of its policy not to hire individuals convicted of a violent felony.
¶ 17. Additionally, the Commission found that Satcher made a valid but unsuccessful job search. Again, we agree. To determine the reasonableness of the claimant’s job search, factors are examined such as job availability, economics of the community, the claimant’s skills and background, and the nature of the disability. Lott, 26 So.3d 1049 (¶ 15). Another consideration in determining disability is wage-earning capacity. Factors examined for loss of wage-earning capacity include the amount of education and training that the claimant has had, inability to work, failure to be hired elsewhere, and the continuance of pain. Id. at (¶ 16). “In order to be deemed permanently and totally disabled under [the Workers’ Compensation Law], a claimant must show something more than an inability to return to the job existing at the time of injury.” Ayers, 958 So.2d at 839 (¶ 18) (citation omitted).
¶ 18. Brawner & Associates conducted a vocational evaluation of Satcher and opined that he could work. The firm classified Satcher’s work history as skilled or semi-skilled, and his work aptitude was found to be average or above-average. In May 2013, Malone and Bruce Brawner traveled to Howard Industries to investigate several jobs that fell within his restrictions of, both sedentary and light work. However, they inexplicably were not asked to try to return Satcher to work with Howard Industries. Instead, from July until November 2013, Brawner forwarded to Satcher’s counsel numerous job opportunities, Satcher began applying to several of these jobs in October, but never found employment. Malone testified she had no reason to doubt that Satcher contacted some of the prospective employers. There was substantial evidence to support the Commission’s finding that Satcher’s employment search was reasonable and diligent.
¶ 19. In finding Satcher permanently and totally disabled, the AJ considered Satcher’s age, education, permanent work restrictions, the testimony of Malone, the FCE, the loss of access to the job market, Satcher’s geographical location, his past work experience, his incapacity to return to past jobs, his reasonable but unsuccessful search for other work, and his lack of computer, clerical, or sales experience.
¶ 20. We conclude there was substantial evidence" to support the Commission’s ruling that Satcher should be awarded permanent and total disability benefits.
II. Hill v. Mel Inc.
¶21, Howard Industries argues that the Commission should have relied on the mandate of Hill and denied Satcher permanent total disability. In its order, the Commission specifically found the facts of Hill v. Mel, Inc., 989 So.2d 969 (Miss.Ct. App.2008), were distinguishable from this case. Hill held that the ability to earn post-injury wages, even if significantly diminished, defeats a claim of permanent total disability. Id. at 972 (¶ 14). In Hill, after being injured and then terminated, the claimant reached MMI and attempted *914 to return to work at his former employer in a position within his physical restrictions, but no such position was available. Id. at 971 (¶¶ 1, 5, 7). However, by the time of his hearing, the claimant was working as a school-bus driver, and an occasional car mechanic and tow-truck operator. Id. at. 972 (¶ 15). Accordingly, the Commission found the claimant was not permanently and totally disabled; however, it did award twenty-percent permanent partial disability benefits. Id. at 971 (¶ 9). The supreme court affirmed. Id. at 970 (¶ 2).
¶22. Howard Industries contends that under Hill, Sateher had “the ability to earn post-injury wages, even if significantly diminished.” It claims the medical testimony indicated Sateher was employable within certain restrictions. Further, the company contends that the only reason it did not rehire[4] Sateher was because of “his violent criminal history,” which was inadvertently discovered, and not his work-related injury. ,.
¶ 23. The Commission distinguished Hill because there the claimant' actually found and performed several post-injury jobs, whereas Sateher did not find any employment after achieving MMI. We agree with this interpretation. While Sateher required a more sedentary job than welder, no such job was available in his area; nor did he have any experience for the jobs available. As discussed above, the Commission found Sateher made a reasonable, diligent effort to find employment after Howard Industries declined to rehire him, and we find substantial evidence to support that finding.
¶ 24. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
' LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ.,‘ CONCUR.

. As will be explained later, Howard Industries learned Satcher had provided incomplete information on his original employment . application. Company policy did not allow him to be rehired.

. Malone arrived at this figure by calculating the average wages of the twenty-six available jobs she provided to Satcher’s attorney.

. There is no indication in the record that Satcher ever displayed any violent tendencies during his tenure at Howard Industries.

. As previously noted, the record does not reflect when Sateher left the employment of Howard Industries after he was unable to return to work as a welder.