GREENLEE, J., FOR THE COURT:
¶ 1. The motion for rehearing is denied. The previous opinions of this Court are withdrawn, and these opinions are substituted in their place.
¶ 2. This is an appeal from a decision of the Mississippi Workers' Compensation Commission in which Bettye Logan was found to have incurred a permanent partial disability (scheduled member) with a sixty-percent loss of industrial use of her left lower extremity stemming from an admittedly work-related injury. Logan appealed the decision of the Commission to this Court, claiming that she is entitled to the maximum allowable amount of permanent total disability under the law instead of the lower amount awarded by the Commission. This is the second appeal this Court has heard stemming from Logan's workers' compensation claim for disability benefits. In Logan v. Klaussner Furniture Corp. , 127 So.3d 1138 (Miss. Ct. App. 2013) ( Logan I ), we held that (1) "at the very least, Logan should have been assessed a loss of wage-earning capacity[,]" and (2) the "evidence in this case supports a finding of permanent partial or total disability[,]" Id . at 1142-43 (¶¶ 20-21), and remanded the case to the Commission for further proceedings consistent with the Court of Appeals' decision. Id . at (¶ 23). After remand, the Commission assessed Logan a loss of industrial use instead of determining her loss of wage-earning capacity, which was inapposite to our decision in Logan I . Because the Commission's subsequent decision did not comport with our findings in Logan I , we reverse and remand for further proceedings consistent with this opinion.
¶ 3. The dissent disagrees asserting that Logan's injury was to her leg and therefore her assessment and recovery should be limited to the scheduled-member provisions of Mississippi Code Annotated section 71-3-17(c)(2) (Rev. 2001). The dissent misapplies our Logan I ruling that, "at the very least," Logan had a loss of wage-earning capacity, the amount of which should have been assessed. The dissent treats that portion of our opinion dealing with loss of wage-earning capacity in Logan I as dicta. "Dicta" is an opinion of a judge that does "not embody the resolution or determination of the specific case before the court. Expressions in a court's opinion that go beyond the facts before the court and therefore are individual views of the author of the opinion and not binding in subsequent cases as legal precedent." 3 West's Encyclopedia of American Law , at 427 (2d ed. 2005); see also Black's Law Dictionary (6th ed. 1990). However, the *1169 language of Logan I that Logan should have been assessed a loss of wage-earning capacity and that Logan had suffered a permanent partial or total disability was the stated reason for the Logan I remand to the Commission. Also, loss of wage-earning capacity is only pertinent when a court has found the disability calculation should be governed by criteria other than the limited scheduled-member criteria of section 71-3-17(c)(1)-(24).
¶ 4. The dissent takes issue with the use of section 71-3-17(c)(25) when permanent partial disability is warranted, arguing its use is limited to a narrow range of "other" circumstances. But section 71-3-17(c)(25)'s use is for that type of condition where there is permanent partial disability and a loss of wage-earning capacity. The dissent's import would be that after remand the Commission may ignore or interpret the Court's mandate to modify the factual and legal ruling although otherwise directed by this Court. The dissent also suggests that we should prescribe a result rather than remand for a finding of Logan's loss of wage-earning capacity, therefore dispensing with this case more conveniently.
FACTS AND PROCEDURAL HISTORY
¶ 5. Logan was employed by the Klaussner Furniture Corporation d/b/a Bruce Furniture Industries. On October 9, 2003, Logan was injured when her foot became caught in some fabric fibers at work, causing her to fall. Logan filed a petition to controvert with the Commission on December 9, 2004, and a hearing was held on August 12, 2010.
¶ 6. On July 29, 2011, the administrative judge (AJ) entered an order finding that Logan had not suffered any industrial loss of use to her left lower extremity. Logan then filed a petition for review before the full Commission. On February 6, 2012, the full Commission affirmed the decision of the AJ.
¶ 7. Logan appealed to this Court, and on June 4, 2013, we reversed and remanded the decision of the Commission in Logan I , where we found that (1) "at the very least, Logan should have been assessed a loss of wage-earning capacity[,]" and (2) the "evidence establish[ed] that Logan ha[d] suffered a permanent partial or total disability." Logan I , 127 So.3d at 1142-43 (¶¶ 20-22).
¶ 8. On remand, the AJ again conducted an analysis of the prior evidence and claim of Logan rather than focusing on the findings within the opinion of the Court of Appeals. The AJ then found that Logan suffered a sixty-percent loss of industrial use to her left lower extremity. On October 23, 2015, the Commission affirmed the decision of the AJ, stating that it agreed with the AJ that Logan had the ability to return to employment at least at a sedentary level based on the medical and vocational evidence. The Commission's ruling relegated Logan to permanent partial disability (scheduled member) instead of permanent partial disability (body as a whole) or permanent total disability. The Commission's ruling also limited Logan to the 175 weeks of compensation allowable under the schedule for the loss of industrial use of her leg (scheduled member), instead of the 450 weeks allowable for her loss of wage-earning capacity under either permanent total disability or permanent partial disability (body as a whole). On November 20, 2015, Logan appealed the decision of the Commission to this Court.
DISCUSSION
¶ 9. While there are multiple issues raised by Logan, her appeal boils down to one: whether the Commission erred by not finding that she suffered a permanent total disability for the maximum of 450 *1170 weeks of compensable time,[1] following our prior opinion in Logan I .
¶ 10. When we review the rulings of the Workers' Compensation Commission, "[t]he Commission's decision will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." Lovett v. Delta Reg'l Med. Ctr. , 157 So.3d 88, 89-90 (¶ 7) (Miss. 2015). "If the Commission's order is supported by substantial evidence, this Court is bound by the Commission's determination, even if the evidence would convince us otherwise if we were the fact-finder." Forrest Gen. Hosp. v. Humphrey , 136 So.3d 468, 471 (¶ 14) (Miss. Ct. App. 2014). As the fact-finder, the Commission determines issues of the credibility of the witnesses and evidence before it, and those determinations are afforded substantial deference. Wagner v. Hancock Med. Ctr. , 825 So.2d 703, 706 (¶ 10) (Miss. Ct. App. 2002) (citing Miss. Pub. Serv. Comm'n v. S. Cent. Bell Tel. Co. , 464 So.2d 1133, 1135 (Miss. 1984) ). The Commission's application of law is reviewed de novo. Lifestyle Furnishings v. Tollison , 985 So.2d 352, 358 (¶ 16) (Miss. Ct. App. 2008) (citing ABC Mfg. Corp. v. Doyle , 749 So.2d 43, 45 (¶ 10) (Miss. 1999) ).
¶ 11. However, when the Court of Appeals has already addressed a case by a ruling-barring a grant of certiorari by the Mississippi Supreme Court-a question settled by the Court of Appeals should be treated as no longer open for review, and such decisions constitute a body of precedent that should be followed in subsequent cases. See White v. Williams , 159 Miss. 732, 132 So. 573, 575 (1931) ; Moss Point Lumber Co. v. Bd. of Sup'rs of Harrison Cty. , 89 Miss. 448, 42 So. 290, 302 (1906) ; Miss. Code Ann. § 9-4-3(2) (Rev. 2014).
¶ 12. Whether a claimant's "permanent disability is partial or total is a question of fact determined by the evidence as a whole, including both lay and medical testimony." Howard Indus. Inc. v. Satcher , 183 So.3d 907, 912 (¶ 14) (Miss. Ct. App. 2016) (citing McGowan v. Orleans Furniture Inc. , 586 So.2d 163, 167 (Miss. 1991) ). When an injury is incurred under Mississippi Code Annotated section 71-3-17(c)(1) to (24) (Supp. 2016) (permanent partial (scheduled-member) disability) that results in a permanent and total loss of wage-earning capacity within section 71-3-17(a) (permanent total disability), section 71-3-17(a) controls exclusively, and the claimant is not limited to the number of weeks of compensation prescribed in section 71-3-17(c). Smith v. Jackson Constr. Co. , 607 So.2d 1119, 1128 (Miss. 1992).
¶ 13. Permanent partial disability (scheduled member) under section 71-3-17(c)(1) to (24) makes a benefit "payable for loss or loss of use, and effect on wage-earning capacity is not part of the calculation of the benefit and is not part of the burden of proof." John R. Bradley & Linda A Thompson, Mississippi Workers' Compensation § 3(2)(A) (2016). Permanent partial disability (body as a whole) under section 71-3-17(c)(25)"calls for evidence on loss of wage-earning capacity and sets a formula for the benefits as two-thirds of the loss of that capacity." Bradley & Thompson, at § 3(1)(C).
*1171 ¶ 14. The Commission's finding focused on Logan's leg as a scheduled member covered under section 71-3-17(c)(2). As stated above, with regard to Logan's injury, we held in Logan I that the evidence supports her injury (1) was a permanent partial or total disability, and (2) "at the very least, Logan should have been assessed a loss of wage-earning capacity." Logan I , 127 So.3d at 1142-43 (¶¶ 20-21). Given that a loss of wage-earning capacity is only pertinent to section 71-3-17(c)(25) with respect to a finding of permanent partial disability, and that we said in Logan I that, "at the very least, Logan should have been assessed a loss of wage-earning capacity[,]" if the Commission were to find that Logan's disability was permanent and partial, then section 71-3-17(c)(25) would be the only plausible section under which it could compensate. For permanent and total disability, then section 71-3-17(a) would apply.
¶ 15. Therefore, either section 71-3-17(a) (permanent total) or (c)(25) (permanent partial) controls in this case, not section 71-3-17(c)(2) as applied by the Commission. Thus, the Commission's decision is based on an erroneous application of law. As such, this case must be reversed and remanded to the Commission for it to determine the amount of Logan's loss of wage-earning capacity and apply that accordingly under either the permanent total or the permanent partial disability provisions of section 71-3-17(a) or (c)(25).
CONCLUSION
¶ 16. We reverse and remand the finding of the Commission for further proceedings consistent with this opinion.
¶ 17. REVERSED AND REMANDED.
LEE, C.J., IRVING, P.J., BARNES, ISHEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., CARLTON AND FAIR, JJ.

Logan's claims were that (1) the Commission's decision was arbitrary, capricious, and contrary to the instruction of this Court, (2) the Commission erred in failing to treat her case as a loss-of-wage-earning-capacity case due to the industrial loss of use to her left lower extremity, making her totally occupationally disabled, entitling her to one-hundred-percent permanent total disability, and (3) that her age and education entitled her to permanent total disability.