# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-WC-00958-COA

| | |
|---|---|
| **ITTA BENA PLANTATION III AND BENCHMARK INSURANCE COMPANY** | **APPELLANTS/ CROSS-APPELLEES** |

**v.**

| | |
|---|---|
| **RAYMOND L. GATES** | **APPELLEE/ CROSS-APPELLANT** |

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/2018 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANTS: | LORALEIGH CHRISTINE PHILLIPS |
| ATTORNEY FOR APPELLEE: | JOSEPH RODNEY FRANKS |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED - 08/13/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     In this appeal, we must determine whether the Mississippi Workers' Compensation Commission erred in calculating loss of wage-earning capacity when awarding Raymond L. Gates permanent partial disability benefits.  Finding that the Commission's decision was supported by substantial evidence, we affirm.  As to Gates's issues on cross-appeal, we also affirm the Commission's decision.

## PROCEDURAL HISTORY

¶2.     Gates suffered a work-related back injury while employed as a tractor driver for Itta Bena Plantation.  Gates's employer stipulated that the injury was compensable and that his

average weekly wage at the time was $718.05. After a hearing, the administrative judge (AJ) found that Gates had suffered a 75% loss of wage-earning capacity. The AJ awarded Gates $359.02 per week in permanent partial disability (PPD) benefits beginning July 13, 2015, for 450 weeks. The Employer appealed to the Commission, which affirmed the AJ's findings.

¶3. The Employer appealed, arguing that the Commission erred in (1) calculating Gates's loss of wage-earning capacity, and (2) interpreting medical evidence regarding Gates's permanent work restrictions.

¶4. Gates cross-appealed, arguing the Commission erred by (1) not finding him permanently totally disabled; (2) finding the Employer rebutted the presumption of permanent total disability (PTD); (3) permitting the deposition of the vocational expert, Angela Malone, in lieu of her testimony; (4) denying his motion to strike Malone's report; and (5) relying upon Malone's testimony.

**FACTS**

¶5. After his injury, Gates initially sought medical treatment from a local hospital. Later, he was treated by both Dr. Rahul Vohra, a physical medicine specialist, and Dr. Jack Moriarity, a neurosurgeon. Gates was diagnosed with fractures to his lumbar spine, a broken rib, and significant multilevel lumbar stenosis. Dr. Vohra and his nurse practitioner, Alice Messer, treated Gates for his injuries for about one year. The treatment involved prescribing physical therapy and pain medication. According to Dr. Vohra, Gates reached maximum medical improvement (MMI) on July 13, 2015. Dr. Vohra assigned permanent work restrictions to light duty, which constituted lifting up to thirty pounds rarely and up to twenty

2

pounds occasionally. Dr. Vohra determined that Gates had a 7% impairment rating to his body as a whole.

¶6. Later, Dr. Howard Katz conducted an independent medical evaluation (IME) on Gates. He agreed with Dr. Vohra's 7% impairment rating. But Dr. Katz determined that Gates was capable of performing medium-duty work. Gates saw Dr. Vohra and Messer twice after undergoing the IME. On both occasions, Dr. Vohra or Messer noted that Gates was still permanently restricted to light-duty work.

¶7. Gates testified that he experienced pain when sitting or standing for long periods and when walking long distances. He stated that his back pain prevented him from participating in his pre-injury hobbies. He further stated that certain tasks took twice as long to perform. Gates stated that he applied for numerous jobs identified by the vocational expert, Angela Malone, but was never offered employment. Gates also applied for approximately three jobs per week during the seven months he received unemployment benefits. Gates has not worked since his injury.

¶8. Malone calculated Gates's loss of access to the labor market using both the light-duty work restriction assessed by Dr. Vohra and the medium-duty work restriction assessed by Dr. Katz. Malone calculated that Gates's restriction to light-duty work resulted in a 74% loss of access to the labor market and that his restriction to medium-duty work resulted in a 17% loss of access to the labor market.

**STANDARD OF REVIEW**

¶9. When substantial evidence supports the Commission's findings, they are binding on

3

this Court. *Mitchell Buick, Pontiac & Equip. Co. v. Cash*, 592 So. 2d 978, 980 (Miss. 1991). "Under Mississippi law, the Workers' Compensation Commission is the ultimate finder of facts in compensation cases, and as such, its findings are subject to normal, deferential standards upon review." *Natchez Equip. Co. Inc. v. Gibbs*, 623 So. 2d 270, 273 (Miss. 1993). "We are bound even though the evidence would convince the [C]ourt otherwise if it were instead the ultimate fact[-]finder. We will overturn [the] Commission's decision only when there is an error of law or an unsupportable finding of fact." *Mont.'s Sea Kettle Rest. v. Jones*, 766 So. 2d 100, 102 (¶7) (Miss. Ct. App. 2000) (internal quotation marks and citation omitted). When the Commission adopts the AJ's findings and conclusions, we review the AJ's findings and conclusions as those of the Commission. *Moore's Feed Store Inc. v. Hurd*, 100 So. 3d 1011, 1017 (¶20) (Miss. Ct. App. 2012).

¶10. Additionally, decisions as to loss of wage-earning capacity are "largely factual and [are] to be left largely to the discretion and estimate of the Commission." *Bryan Foods Inc. v. White*, 913 So. 2d 1003, 1010 (¶28) (Miss. Ct. App. 2005).

## DISCUSSION

### I. Direct Appeal

#### A. The AJ did not err in calculating loss of wage-earning capacity.

¶11. The Employer argues that the AJ erred in calculating Gates's loss of wage-earning capacity by disregarding Malone's testimony and by equating the loss of wage-earning capacity with Gates's loss of access to the labor market.

¶12. Disability is defined as incapacity due to injury to earn the wages that the employee

4

was receiving at the time of the injury in the same or other employment. Miss. Code Ann. § 71-3-3(i) (Rev. 2011). If, after reaching MMI, the claimant has not returned to work, "the claimant must establish either that he has sought and been unable to obtain work in similar or other jobs or show that, upon his reaching [MMI], he reported back to his employer and the employer refused to reinstate or rehire him." *Chestnut v. Dairy Fresh Corp.*, 966 So. 2d 868, 871 (¶5) (Miss. Ct. App. 2007). To determine loss of wage-earning capacity, "[t]he Commission considers the employee's actual wages earned prior to the injury as compared to the employee's capacity to earn those same wages after the injury, as well as other factors such as the employee's age, education, training and work experience, and his or her ability to return to the same or other employment." *Airtran Inc. v. Byrd*, 953 So. 2d 296, 301 (¶11) (Miss. Ct. App. 2007). The Commission is "required to consider the evidence as a whole, including [a claimant's] loss of access to the job market . . . ." *Neshoba Cty. Gen. Hosp. v. Howell*, 999 So. 2d 1295, 1300 (¶16) (Miss. Ct. App. 2009).

¶13. The AJ's order demonstrates that she weighed Malone's testimony and did not equate Gates's loss of wage-earning capacity with his loss of access to the labor market. The AJ relied upon Malone's testimony as proof that Gates had the capacity to earn wages and remained employable. However, the AJ did recognize that many of the jobs Malone identified were not applicable to Gates's current situation—either because the jobs were outside his work restrictions or did not involve work similar to his prior work. In determining Gates's 75% loss of wage-earning capacity, the AJ stated that she considered the record as a whole, including:

(a) Malone's testimony regarding the vocational effects of [Gates's] permanent impairments; (b) evidence of the nature and severity of [Gate's] permanent medical impairment; (c) his permanent work restriction to light work by Dr. Vohra; (d) his unsuccessful attempts to secure the same and other work between August 2015 and March or April 2016 when he began to receive Social Security Disability benefits; (e) his work history as a farm laborer performing medium to heavy unskilled or semi-skilled work for thirty-five years; (f) his age of fifty-six; (g) his geographic location in Yazoo City; and (h) his high school education, among other industrially-related factors . . . .

The Commission agreed with the AJ. The record contains substantial evidence to support the Commission's decision. As a result, we affirm.

## B. The medical evidence supported Gates's light-duty restrictions.

¶14. The Employer also argues that the Commission erred in interpreting the medical evidence relating to Gates's restrictions and the permanent nature of his injuries. The Employer contends that Gates was capable of performing at the lower end of medium-duty work based upon Malone's testimony and Dr. Katz's IME. During her deposition, Malone indicated that under federal standards the restrictions imposed by Dr. Vohra were also within the lower end of medium-duty work restrictions. According to Malone, light-duty work was lifting up to twenty pounds and medium-duty work was lifting between twenty-one and fifty pounds. Malone did not testify to the frequency of these restrictions. Dr. Vohra and Messer restricted Gates to lifting up to thirty pounds rarely, twenty pounds occasionally, and ten pounds frequently.

¶15. The AJ found that because Dr. Vohra was Gates's treating physician, his opinion had more probative value than Dr. Katz's opinion. The AJ stated that Dr. Vohra was "in a position of superior knowledge with regard to [Gates's] medical impairment" and "not under

6

the impression that he had been retained for purposes of litigation." The Commission agreed with the AJ's findings on this point. The Commission "serves as the ultimate fact[-]finder in addressing conflicts in medical testimony and opinion." *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 336 (¶13) (Miss. 2003). We find substantial evidence to support the Commission's findings.

## II. Cross-Appeal

¶16. Gates filed a cross-appeal raising several issues, which we have consolidated as follows: (1) Gates proved that he had a PTD, and (2) the Commission should not have relied upon Malone's testimony.

### A. The evidence supports the AJ's finding of PPD.

¶17. Gates contends that he established a prima facie case of PTD and the Employer failed to rebut the presumption. "To establish a prima facie case for [PTD], the claimant has the burden to show he has sought and been unable to find work in the same or other employment." *Howard Indus. Inc. v. Satcher*, 183 So. 3d 907, 912 (¶14) (Miss. Ct. App. 2016) (internal quotation marks omitted). "The claimant can also establish a prima facie case for total disability if, after reaching MMI, the claimant reports back to the employer for work and the employer refuses to reinstate or rehire him." *Id.* (internal quotation mark omitted). Once a claimant makes a prima facie showing of total disability the burden shifts to the employer to rebut or refute the claimant's evidence. *Lott v. Hudspeth Ctr.*, 26 So. 3d 1044, 1049 (¶15) (Miss. 2010).

¶18. The AJ found that Gates's inability to find work in the same employment and his

7

unsuccessful attempt to return to work for his employer raised the PTD presumption. There was some confusion about whether Gates tried to return to work with the Employer. Gates said he did not try to do so because the Employer told him that he was going to be fired anyway due to down-sizing. At one point, Gates's attorney did send the Employer a letter requesting Gates be rehired. One of the Employer's employees testified that Gates would not have been rehired due to his light-duty work restriction. Regardless, the AJ concluded that the Employer rebutted the presumption based upon evidence that Gates remained employable, including evidence from Malone that Gates had the capacity to earn wages. The Commission agreed with the AJ, and we find substantial evidence to support the decision. As a result, we affirm.

### B.     Malone's testimony was admissible.

¶19.    Gates raises several claims regarding Malone's testimony. First, Gates argues that Malone's testimony was not credible because it contained inconsistencies. The AJ did not agree with all of Malone's findings but did agree with Malone's testimony regarding the effects of Gates's permanent impairment. The Commission agreed with the AJ's findings. Because the Commission is entitled to resolve any conflicts or inconsistencies in the evidence and is the ultimate judge of the credibility of witnesses, we find no error. *See Choctaw Resort Dev. Enter. v. Applequist*, 161 So. 2d 1134, 1137 (¶¶6-7) (Miss. Ct. App. 2015).

¶20.    Second, Gates argues that the AJ erred by allowing the Employer to take Malone's deposition rather than testify during the hearing. Noting that Malone would be unavailable for the hearing, the AJ allowed the Employer to take her deposition. Gates claims that the

8

Employer failed to satisfy any of the exceptions permitted under Mississippi Rule of Civil Procedure 32(a), so Malone's deposition should have been excluded. Because the Commission's rulings in discovery matters are entitled to deference, we find no error.

¶21. Third, Gates claims the AJ erred by denying his motion to strike a supplemental report submitted by Malone after the hearing. Gates argues that he should have been allowed to cross-examine Malone regarding new information contained in the report. At the time of Malone's deposition, she had used an average weekly wage of $594.97 in her calculations. During the hearing, the parties stipulated that Gates's average weekly wage was $718.05. The record includes an email to both parties' attorneys from the AJ noting that the loss of wage-earning capacity should have been calculated using the stipulated average weekly wage of $718.05. The Employer then asked Malone to update her report using the stipulated amount. Both Gates and the Employer agreed during the hearing that the average weekly wage was $718.05, so allowing Malone to update her report to reflect this was within the AJ's discretion. We find no error.

## CONCLUSION

¶22. Because substantial evidence supported the Commission's decision to award Gates permanent partial disability benefits, we find no error. We affirm the Commission's judgment on direct appeal and cross-appeal.

¶23. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**

9